**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>United States Department of Justice<br>Enforcement and Affirmative Litigation<br>Branch<br>450 5th St. NW, Suite 6400,<br>Washington, DC 20001,<br><br>　　Plaintiff,<br><br>　　　　v.<br><br>AMAZON.COM, INC., a corporation,<br>410 Terry Avenue North,<br>Seattle, Washington 98109,<br><br>　　Defendant. | Case No.: 1:26-cv-2305<br><br><br><br>**COMPLAINT FOR PERMANENT<br>INJUNCTION, CIVIL PENALTY<br>JUDGMENT, AND OTHER RELIEF** |

Plaintiff, the United States of America, acting upon notification from the Federal Trade Commission ("FTC" or "Commission"), for its Complaint, alleges:

1.　　Plaintiff brings this action for Defendant's violations of Section 5(a) of the FTC Act ("FTC Act"), 15 U.S.C. § 45(a), and Section 609(e) of the Fair Credit Reporting Act (the "FCRA"), 15 U.S.C. § 1681g(e). For these violations, Plaintiff seeks relief, including a permanent injunction, civil penalties, and other relief, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b) and Section 621(a) of the FCRA, 15 U.S.C. § 1681s(a).

**JURISDICTION AND VENUE**

2.　　This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355.

3.　　Venue is proper in this district under 28 U.S.C. §§ 1391(b)(1), (b)(2), and (c)(2), 1395(a), and 15 U.S.C. § 53(b).

1

**PLAINTIFF**

4.    Plaintiff brings this action upon notification from the FTC, pursuant to Section 16(a)(1) of the FTC Act, 15 U.S.C. § 56(a)(1). The FTC is an agency of the United States Government created by the FTC Act. 15 U.S.C. §§ 41–58. The FTC is charged, *inter alia*, with enforcing Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce, and Section 609(e) of the FCRA, 15 U.S.C. § 1681g(e), which imposes duties on businesses that have provided credit, goods, or services to, accepted payment from, or otherwise entered into a transaction with someone who is believed to have fraudulently used another person's identification, and which the FTC enforces pursuant to Section 621(a) of the FCRA, 15 U.S.C. § 1681s(a).

**DEFENDANT**

5.    Defendant Amazon.com, Inc. ("Amazon" or "Defendant") is a Delaware corporation with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109. Defendant transacts or has transacted business in this District and throughout the United States.

**COMMERCE**

6.    At all times relevant to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

**FAIR CREDIT REPORTING ACT**

7.    The FCRA was enacted in 1970, became effective on April 25, 1971, and has been in force since that date. The Fair and Accurate Credit Transactions Act amended the FCRA in December 2003 and the Dodd-Frank Act amended the FCRA in July 2010.

8.      Under Section 621(a) of the FCRA, 15 U.S.C. § 1681s(a), and Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), this Court is authorized to issue a permanent injunction prohibiting Defendants from violating the FTC Act and the FCRA. Section 621 of the FCRA, 15 U.S.C. § 1681s, authorizes the Commission to use all of its functions and powers under the FTC Act to enforce compliance with the FCRA by all persons subject thereto except to the extent that enforcement specifically is committed to some other governmental agency, irrespective of whether the person is engaged in commerce or meets any other jurisdictional tests set forth by the FTC Act.

9.      Section 609(e)(1) of the FCRA, 15 U.S.C. § 1681g(e)(1), requires a "business entity" to provide an identity theft "victim" with "application and business transaction records" evidencing any transaction that the victim alleges to be the "result of identity theft."  The business entity must provide such records "not later than 30 days after the date of receipt of a request from a victim."

10.      For purposes of Section 609(e)(1), a "business entity" is an entity that has "provided credit to, provided for consideration products, goods, or services to, accepted payment from, or otherwise entered into a commercial transaction for consideration with, a person who has allegedly made unauthorized use of the means of identification of the victim[.]"  15 U.S.C. § 1681g(e)(1).

11.      Section 609(e)(11), 15 U.S.C. § 1681(e)(11), defines a "victim" as "a consumer whose means of identification or financial information has been used or transferred (or has been alleged to have been used or transferred) without the authority of that consumer, with the intent to commit, or to aid or abet, an identity theft or a similar crime."

12. To obtain application and business transaction records of the alleged identity theft, the victim must make the request for records in writing and mail it to an address specified by the business entity. 15 U.S.C. § 1681g(e)(3). The records must be provided to the victim or, if specified or authorized by the victim, a law enforcement agency.

13. Prior to providing the records, a business entity can require that the victim provide:

A. proof of his or her identity, such as a copy of the victim's government-issued identification card, 15 U.S.C. § 1681g(e)(2)(A); and

B. proof of the claim of identity theft, by providing a police report and a completed affidavit, 15 U.S.C. § 1681(g)(2)(B).

14. Section 609(e) permits a business entity to deny a request for records related to identity theft only in certain specific circumstances. 15 U.S.C. § 1681g(e)(5). The business entity may decline to provide records in its possession if, in the exercise of good faith, the business entity determines that (i) Section 609(e) does not require disclosure of the information; (ii) after reviewing the information referenced in Paragraph 13 above, the business entity does not have a high degree of confidence in knowing the true identity of the individual requesting the information; (iii) the request for the information is based on a misrepresentation of fact by the individual requesting the information relevant to the request for information; or (iv) the information requested is Internet navigational data or similar information about a person's visit to a website or online service. 15 U.S.C. § 1681g(e)(5).

15. Section 609(e) was first added to the FCRA in 2003, and the FTC has reminded business entities numerous times since 2003 that they are required to comply with FCRA Section 609(e), including the business's obligation to provide records directly to victims upon request.

**Defendant's Knowing Violations of the FCRA**

16.     Amazon is one of the largest retailers in the world, with significant online presence through its Amazon.com retail website. Since 2018, Amazon has been the world's second largest public company.

17.     In June 2023, after receiving a credible consumer complaint that Amazon had failed to provide records required under FCRA Section 609(e) to an identity theft victim, FTC staff advised Amazon's counsel to review the company's compliance with Section 609(e). Nevertheless, when the same identity theft victim attempted again to obtain records from Amazon several months later, the company again refused to provide the required records. In fact, Amazon did not provide the requested records until after the FTC notified Amazon in January 2025 that it was investigating Amazon's compliance with Section 609(e).

18.     The experience described above was not an exception. Prior to February 2025, Amazon routinely failed to provide application and business transaction records to identity theft victims within 30 days of receiving their requests for such records, as required by the FCRA.

19.     In numerous instances, Amazon refused to provide the requested records at all, citing "security" or "privacy" reasons, even though Section 609(e) does not permit Amazon to deny a request for application and business transaction records related to identity theft on those grounds.

20.     In other instances, Amazon denied consumers' requests for records on the purported grounds that the consumer had not been a victim of identity theft, despite the consumer having informed Amazon that their financial information had been used without their authorization and despite the consumer having submitted the materials specified in Section 609(e)(2) substantiating the identity theft.

21. When identity theft victims whose credit or debit card information had been used without authorization contacted Amazon to request records associated with these transactions, the victims would often enter a Kafkaesque sequence in which the Amazon agent would refuse to provide the identity theft victim with records related to the fraudulent account unless the identity theft victim was able to authenticate the identity of the person who had opened the fraudulent Amazon account. That typically meant asking the identity theft victim to provide the name of the person who established the fraudulent Amazon account that had used the victim's credit card without authorization. But this was often information that could only be found in the business records the identity theft victim had requested from Amazon in the first place.

22. For example, one identity theft victim who contacted Amazon in June of 2023 seeking business records related to unauthorized charges stemming from a fraudulent account was told that the customer service agent could not *share* details about the other account that had used the victim's credit card for "security reasons," but that the agent could *confirm* details if the victim guessed the name on the account (*i.e.*, guessed the name of the identity thief). The victim guessed more than 30 names before giving up and agreeing to be transferred to another agent, who then told the victim that because the fraudulent account could not be authenticated by the victim, Amazon would not even remove the victim's credit card number from the fraudulent account.

23. Another identity theft victim who was seeking business records in June 2023 related to unauthorized monthly charges on their card was asked at least a half a dozen times by Amazon to guess the names of friends and family members who might be the fraudulent account-holder. After the victim asked to speak with a supervisor, the supervisor continued to press the victim to provide the name on the fraudulent account in order to receive information

about it, and ultimately told the victim that information about the fraudulent account that was using the victim's credit card without authorization could not be provided due to "security concerns." The victim complained that "Asking someone to GUESS a name to verify a suspected fraudulent account is absolutely ludicrous."

24. Another identity theft victim who was seeking business records in June 2023 related to an unauthorized monthly charge for a Prime membership expressed significant frustration with the company after an Amazon agent refused to provide business records related to the identity theft: "Do you understand how ridiculous that is? How can I provide the information for someone who possibly has my credit card information? The whole reason I contacted you was to find out what the charges to my credit card were. You have the information I need. I do not. I don't know the account. If I did, then I wouldn't need to contact you." After the identity theft victim was transferred to another agent, the second agent prompted the victim to "let me know every known name from your friend's [sic] or family. If it matches with the account name[,] I'll confirm it with you. So, could you please guess some names who could potentially use your card on their account?" The frustrated victim guessed over a dozen names, but was unable to guess the identity thief's name, and so the agent refused to provide the requested records related to the identity theft.

25. While Amazon's agents routinely demanded that identity theft victims provide the name on the account that committed the identity theft in order to get records related to the identity theft, they did not generally ask identity theft victims to provide the verification documents that Section 609(e) expressly authorizes Amazon to request (*e.g.*, a driver's license or an identity theft affidavit).

26.    In still other instances, some Amazon representatives told identity theft victims that they were not *able* to access the requested records. While the statute permits a company to refuse to provide records in limited circumstances, a particular customer service representative's claim of not having personal access to such records is not one of those exceptions. In fact, Section 609(e)(10) only permits a company to raise as an affirmative defense that the records do not exist or are not reasonably available *after* the company has made a reasonably diligent search of its available business records.

27.    Amazon even refused to provide application and business transaction records to law enforcement agencies who had been authorized to, and who did, submit requests on behalf of consumers who were victims of identity theft. Amazon claimed in some cases that the law enforcement officer would have to provide a subpoena or other legal process to receive the records, even though that requirement is not a prerequisite to Section 609(e) requests, and in fact Section 609(e)(5) does not permit Amazon to deny a request for application and business transaction records related to identity theft on that basis.

28.    As a result of Amazon routinely failing to provide application and business transaction records to identity theft victims, many victims of identity theft were unable to obtain application and business transaction records to which they were legally entitled related to the identity theft they suffered.

29.    Identity theft victims routinely expressed frustration with Amazon about its failure to provide records that they requested in connection with identity theft.

30.    Some identity theft victims tried to help Amazon comply with the law by referencing or even providing the company with copies of Section 609(e) of the FCRA, copies of the FTC's business guidance about Section 609(e), and references to a prior enforcement action

by the FTC concerning Section 609(e), all in an effort to persuade Amazon to comply with the requirements of Section 609(e).

31.    For example, one consumer sent a letter to Amazon in March 2022 requesting records relating to an incident of identity theft and noted, "In accordance with Section 609(e) of the Fair Credit Reporting Act, 15 U.S.C. § 1681g(e), I am requesting that you provide me copies of business records relating to the fraudulent account identified above."  The consumer enclosed a printout of the FTC business guidance publication "Businesses Must Provide Victims and Law Enforcement with Transaction Records Relating to Identity Theft."  After receiving no response to the first request, the consumer followed up with another letter in August 2022 (which was stamped as received by Amazon's Legal Department) in which the consumer complained that Amazon had failed to provide required records, reiterated that the consumer was seeking records related to identity theft, and again enclosed a printout of the FTC's business guidance publication.

32.    Likewise, two consumers who had both requested records related to identity theft in March 2022, but did not receive the records, sent follow-up requests to Amazon in April 2022 to complain that the company had failed to provide required records within 30 days, and to request that the company follow the law and provide the records. Both consumers enclosed printouts of Section 609(e) in their March 2022 and April 2022 correspondence with Amazon.

33.    In a June 2023 email to Amazon's legal counsel, another consumer complained that the company was violating Section 609(e) by demanding a subpoena before providing identity theft records to law enforcement. An earlier email from that consumer, in which the consumer also complained that the company was not providing identity theft records but did not

specifically reference Section 609(e), had already been forwarded internally among members of Amazon's legal team, one of whom received the subsequent email referencing Section 609(e).

34. None of these efforts prompted Amazon to change its practices in connection with responding to such requests.

35. In addition to denying many consumers' requests for records, on numerous occasions, Amazon failed to respond to victims – even to only partially provide records or even to issue a denial of their requests – within the statutorily-required 30-day period. For example, the consumer referenced in Paragraph 31 requested records related to identity theft in March 2022, and noted in a subsequent complaint to the company in August 2022 that the consumer had not received any response to the earlier request. Another consumer who first sought records in March 2025 did not receive a denial of the request (on the basis of the company not locating responsive records) until August 2025, and another consumer who first sought records in March 2025 finally received the records in August 2025.

36. Although in early 2025 Amazon did finally implement a written policy to respond to Section 609(e) requests by providing victims of identity theft with the application and business transaction records they requested, it did so only after learning that the FTC was investigating the company's failure to comply with the law. And facts uncovered during the course of the FTC's investigation raise substantial concerns that despite that policy, Amazon continued to deny certain Section 609(e) requests for unlawful reasons.

37. Based on the facts and violations of law alleged in this Complaint, including Defendant's pattern or practice of knowingly violating Section 609(e) of the FCRA, Plaintiff has reason to believe that absent injunctive relief, Defendant is violating or is about to violate laws enforced by the FTC because, among other things, Amazon knowingly engaged in its unlawful

10

acts and practices until at least early 2025, despite numerous complaints from victims of identity theft and outreach by the Commission. Amazon only implemented a policy to stop its unlawful conduct in early 2025 when it became aware that the FTC was investigating its conduct, and despite that step, Plaintiff has reason to believe that Amazon continued violating Section 609(e) in connection with at least some record requests from identity theft victims received afterward.

38. Pursuant to Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), a violation of the FCRA constitutes an unfair or deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count I – Failure to Provide Requested Records

39. In numerous instances, Defendant entered into commercial transactions with persons who made unauthorized use of the means of identification of victims of identity theft, and Defendant then failed to provide the application and business transaction records related to those transactions to the identity theft victims upon request.

40. Therefore, Defendant's acts or practices as described in Paragraph 39 violate Section 609(e) of the FCRA, 15 U.SC. § 1681g(e), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## Count II – Failure to Respond to Records Requests Within 30 Days

41. In numerous instances, Defendant entered into commercial transactions with persons who made unauthorized use of the means of identification of victims of identity theft, and Defendant then failed to provide the application and business transaction records related to those transactions to the identity theft victims not later than 30 days after the identity theft victims requested the records.

42.     Therefore, Defendant's acts or practices as described in Paragraph 41 violate Section 609(e) of the FCRA, 15 U.SC. § 1681g(e), and Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## CONSUMER INJURY

43.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendant's violations of the FCRA and the FTC Act. Absent injunctive relief by this Court, Defendant is likely to continue to injure consumers and harm the public interest.

## CIVIL PENALTIES

44.     Section 621(a)(2)(A) of the FCRA, 15 U.S.C. § 1681s(a)(2)(A), authorizes the Court to award monetary civil penalties in the event of a knowing violation of the FCRA, which constitutes a pattern or practice of violations. Amazon's violations of the FCRA, as alleged in this Complaint, have been knowing and have constituted a pattern or practice of violations. As specified by the Federal Civil Penalty Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, the Court is authorized to award a penalty of not more than $4,983 per violation for penalties assessed after January 17, 2025.

45.     Each instance in which Defendant has failed to comply with the FCRA constitutes a separate violation of the FCRA for the purpose of assessing monetary civil penalties under Section 621 of the FCRA, 15 U.S.C. § 1681s. Plaintiff seeks monetary civil penalties for every separate violation of the FCRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

A.     Enter a permanent injunction to prevent further violations of the FTC Act and FCRA;

B.    Impose civil penalties for each violation of the FCRA as alleged in this Complaint; and

C.    Award Plaintiff such additional relief as the Court may deem just and proper.

Respectfully submitted,

DATED: June 29, 2026

Of Counsel:

WHITNEY MOORE (D.C. Bar No. 496842)
GORANA NESKOVIC (D.C. Bar No. 997322)
JAMIE HINE (IL Bar No. 6281852)
Attorneys
Federal Trade Commission
Division of Privacy and Identity Protection
Federal Trade Commission
600 Pennsylvania Ave, NW
Washington, DC 20580
Mail Stop CC-8232
(202) 326-2645 (Moore)
(202) 326-3392 (Fax)

**FOR THE UNITED STATES OF AMERICA:**

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

SARMAD M. KHOJASTEH
Deputy Assistant Attorney General

LISA K. HSIAO
Acting Director

/s/ Lory D. Alexander
LORY D. ALEXANDER (D.C. Bar No. 998686)
ZACHARY A. DIETERT (D.C. Bar No. 1003784)
Assistant Directors
Enforcement and Affirmative Litigation Branch
U.S. Department of Justice
450 5th St., N.W. Ste. 6400-S
Washington, D.C. 20530
Telephone (202) 532-4071
Fax: (202) 514-8742
Lory.D.Alexander@usdoj.gov
Zachary.A.Dietert@usdoj.gov

13